# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

**CENTRAL ELECTRIC POWER COOPERATIVE, INC., SALUDA RIVER ELECTRIC COOPERATIVE, INC., and SOUTH CAROLINA PUBLIC SERVICE AUTHORITY,** ] ] ]

***Plaintiff,*** ]

***V.s.*** ]

**SOUTHEASTERN POWER ADMINISTRATION, CHARLES A. BORCHARDT in his capacity as Administrator of the Southeastern Power Administration, FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF ENERGY, and SPENCER ABRAHAM, in his capacity as Secretary of Energy,** ] ] ] ] ] ]

***Defendants.*** ]

***CIVIL ACTION NO. 3:91-2449-0***

FILED
JUL 11 2002
LARRY W. PROPES, CLERK
COLUMBIA, S.C.

ENTERED
JUL 12 2002
NMH

## ***ORDER***

**This case is now before the Court on motion by the plaintiffs to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. On October 17, 2001, this Court entered an order granting the plaintiffs' motion for summary judgment and directed the defendants to**



refund to the plaintiffs the monies paid by them pursuant to a surcharge on electricity that plaintiffs purchased from the Southeastern Power Administration (SEPA).[1] In their pending motion to alter or amend the judgment, the plaintiffs seek an award of prejudgment interest against the United States. Plaintiff also seek to have the judgment amended to state that dismissal of the plaintiffs' Fifth Amendment takings claim is "without prejudice" instead of "with prejudice" as now stated in the judgment. The Court is advised that the defendants consent to the plaintiffs' request that the judgment be amended to reflect that the dismissal of the plaintiffs' Fifth Amendment takings claim is without prejudice and accordingly, the judgment will be amended as agreed.

As stated above, the plaintiffs now seek award of prejudgment interest on the sum of $3,544,316.00 which the Court has ordered the defendants to return to the plaintiffs. Plaintiffs acknowledge the general rule that no interest can be awarded against the government absent an express

---

[1]The judgment has been amended twice. On November 2, 2001 pursuant to a joint motion by the parties, the judgment was amended by stating the precise sums of money to be paid the respective parties. On November 7, 2001 the Court entered a second amended judgment to correct a scrivener's error which had misnamed Central Electric Power Cooperative, Inc. in the body of amended judgment.





AO 72A
(Rev.8/82)

**statutory provision or a contractual agreement, *Library of Congress v. Shaw*, 478 U.S. 310 (1986) (decision later limited by statute as to other issues) , but contend that the general rule does not apply. The plaintiffs argue that: 1) interest is allowed under the Administrative Procedure Act; 2) Southeastern Power Administration (SEPA) is acting as a private commercial enterprise; 3) plaintiffs' constitutional claims merit prejudgment interest; and 4) prejudgment interest should be awarded as a matter of equity and fairness. The defendants contest this requested relief and argue that they are protected by sovereign immunity from an award of prejudgment interest.**

**The Court has fully considered the parties' briefs and arguments by counsel. The Court must now decide if either the contracts between the parties, or the statutes under which this case was brought,[2] or if equitable considerations, waive sovereign immunity. For the following reasons the Court finds and concludes the plaintiffs are not entitled to prejudgment interest.**

**It is undisputed that the contracts between the parties to this action**



---

**[2]Material statutes are: the Flood Control Act of 1944, 16 U.S.C. §825s; the Department of Energy Organization Act, 42 U.S.C. § 7101 *et seq*.; and, the Administrative Procedure Act, 5 U.S.C. §500 *et seq.***



AO 72A
(Rev.8/82)

**do not provide for payment of interest.**

**It is undisputed that there is no statute that expressly provides for payment of prejudgment interest in this case, and plaintiffs concede this at p. 4 of their brief. Further, Congress has declared in 28 U.S.C. § 2516(a) that "Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." Although this statute expressly applies to cases within the jurisdiction of the Court of Federal Claims, in construing Section 2516(a) the Supreme Court has held that the provision is not limited to cases in the United States Court of Federal Claims, but is a legislative embodiment of the traditional legal rule. *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 588 (1947) (the statute "embodies the traditional rule that interest cannot be recovered against the United States upon unpaid accounts or claims in the absence of an express provision to the contrary in a relevant statute or contract."); *United States v. New York Rayon Importing Co.*, 329 U.S. 654, 658 (1946) ("this provision codifies that traditional rule regarding the immunity of the United States from liability from interest on unpaid accounts or claims.")**





AO 72A
(Rev.8/82)

The Court now turns to the contentions made by the plaintiffs that this action should be an exception to the general rule.

Where a party is adversely affected or aggrieved by final agency action, the APA waives the agency's sovereign immunity from suit and permits judicial review. 5 U.S.C.§702. From this plaintiffs incorrectly conclude that the waiver somehow implies a waiver of sovereign immunity for prejudgment interest against the United States.

The APA does not contain a specific waiver for prejudgment interest. Plaintiffs reliance on *Bowen v. Massachusetts*, 487 U.S. 879, 893-901 (1988), does not support their argument as to an implicit waiver. *Bowen* holds that a party may have an equitable action against the United States for specific relief which may include the recovery of specific property or monies. *See Bowen* at 893. *Bowen* does not hold that the APA waives sovereign immunity for prejudgment interest against the United States. Nor can a waiver for prejudgment interest be implied since waivers must be explicit and are to be construed in favor of the sovereign. *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *Forman v. Small*, 271 F.3d 285, 296 (D.C. Cir. 2001). Therefore, plaintiffs' attempt to expand the APA waiver of sovereign





AO 72A
(Rev.8/82)

**immunity to include a waiver for prejudgment interest fails.**

**Plaintiffs allege that SEPA is acting as a private commercial enterprise because it sells hydroelectric power, and that the Supreme Court has recognized that the no-interest rule does not apply in situations where the government has "cast off the cloak of sovereignty and assumed the status of a private commercial enterprise". *Library of Congress v. Shaw*, 478 U.S. 310, 317 (1986).**

**In College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 680 (1999), the Supreme Court held that the fact that a government entity (in that case a state) is a "market participant" has no relevance to whether a waiver of sovereign immunity can fairly be implied. SEPA has not assumed the status of a private commercial enterprise because it is not in the business of selling electricity for a profit. Section 5 of the Flood Control Act of 1944, as amended, governs the marketing of power by SEPA. 16 U.S.C. §825. The statutory guidance to the Secretary of Energy as to determination of rates it charges for the power it sells, now delegated to SEPA, is twofold: "He is required to protect consumers by ensuring that power is sold 'at the lowest possible rates...consistent with**





AO 72A
(Rev.8/82)

sound business principles,' " yet is also "required by the plain language of the statute to protect the public fisc by ensuring that federal hydroelectric programs recover their costs and do not require subsidies from the federal treasury." *United States v. City of Fulton*, 475 U.S. 657, 667-68 (1986) (citing legislative history and *United States v. Tex-La Elec Coop. Inc.*, 693 F.2d 393, 399-400 (5th Cir. 1982)). In sum, SEPA is required to set its rates so as to exactly recover its costs, neither earning a profit nor incurring a loss.

The essential question with respect to awards of prejudgment interest is whether a government agency, for which sovereign immunity has been waived, "has embarked upon an essentially commercial venture which aspires to profitability." *Spawn v. Western Bank-Westheimer*, 989 F.2d 830, 837 (5th Cir. 1993). In the instant case SEPA was not launched into the commercial world with a profit motive, but rather it was specifically prohibited from making a profit, and there is no applicable waiver of sovereign immunity.

All of the cases relied upon by Plaintiffs in support of their argument that SEPA is engaging in a private commercial enterprise are inapposite because none involved a factual situation, as here, in which Congress has





AO 72A
(Rev.8/82)

specifically prohibited profit. Rather, the cases relied upon by plaintiffs involve claims in which government entities were engaged in commercial activities for profit. In *Standard Oil v. United States*, 267 U.S. 76, 79 (1925), the United States was in the insurance business for a profit, and had also waived sovereign immunity regarding its business activity. *Id.* at 79. In *Loeffler v. Frank,* 486 U.S. 549 (1988), the Court held that when Congress launched the Postal Service into the commercial world, and included a waiver of sovereign immunity in its charter, Congress "waived any otherwise existing immunity of the Postal Service from interest awards". Id. at 556.

Plaintiffs also rely on *Sandia Oil Co., Inc. v. Sunwest Bank of* Albuquerque, 889 F.2d 258 (10th Cir. 1989), a case which supports defendants' position. That case held that prejudgment interest could not be awarded against the Federal Emergency Management Agency (FEMA) because there was no waiver of sovereign immunity, and FEMA was not engaged in a commercial activity but in a subsidized insurance program. Similarly, since SEPA is not engaged in a private commercial enterprise, and since there has been no waiver of sovereign immunity, no prejudgment interest can be awarded against it.





AO 72A
(Rev.8/82)

**Finally, the legislative history does not support plaintiffs' contention that Congress intended federal power marketing agencies (PMAs) to act as private commercial enterprises. The primary purpose of the projects from which the PMAs market power is typically reclamation (i.e., irrigation) or flood control, and the generation of hydroelectric power. A number of the projects also have additional purposes such as water supply,[3] recreation or navigation.[4] SEPA markets only that amount of power which the Corps of Engineers determines to be in excess of the power needed to operate the projects, and markets it at cost. According to the Flood Control Act, marketing of the hydroelectric power from these projects should "encourage the most widespread use thereof at the lowest possible rates to consumers consistent with sound business principles,..." and "[p]reference in the sale of such power and energy shall be given to public bodies and cooperatives," such as the six plaintiffs here. 16 U.S.C. § 825s. Also, SEPA, as a PMA, is not subject to the Federal Power Act (16 U.S.C. 797-823b) and has no utility**

---

**[3] *See, e.g.* Pub. L. No. 75-161, 52 Stat. 1215 (1938).**

**[4] *See, e.g.* Bonneville Project Act § 1, 16 U.S.C. § 832 (1985).**





AO 72A
(Rev.8/82)

responsibility to the preference customers it serves. Rather, SEPA provides, on average, a small amount of its customers' electric needs. *ElectriCities of North Carolina v. Southeastern Power Admin.,* 774 F.2d 1262, 1264-65 (4th Cir. 1985); *Greenwood Utilities Comm'n v. Schlesinger*, 515 F. Supp. 653, 656 (M.D. Ga. 1981). SEPA does not own or control any transmission lines, but must depend on others to move the output of its projects to its customers. *ElecriCities,* 774 F.2d at 1264; *Greenwood*, 515 F. Supp. at 656. In essence, SEPA operates a federal marketing program for low cost hydroelectric power to benefit a Congressionally designed group of customers, and is not available for marketing to the general public. Congress never intended for SEPA to be a private commercial enterprise engaged in a business activity for profit, and no court has ever held that a PMA is acting as a private commercial enterprise when it sells low-cost surplus hydroelectric power.

Plaintiffs argue that they are entitled to prejudgment interest as a matter of constitutional right because they seek prejudgment interest on the basis of constitutional claims. Brief at 7. Plaintiffs' argument fails for several reasons. First, this Court did not rule in favor of plaintiffs on any constitutional claim. Plaintiffs' taking claim was dismissed on jurisdictional



grounds. Order, entered October 16, 2001, at p. 16. Secondly, plaintiffs' reliance on *Mary Helen Coal Corporation v. Hudson*, 235 F.3d 207 (4th Cir. 2000) is misplaced because in that case, contrary to the instant case, plaintiff had prevailed on a constitutional claim; also, that case deals with the prejudgement interest rights of private parties and not with the issue of prejudgment interest against the United States.

Plaintiffs argue that an award of prejudgment interest in this case would not be "interest at law" (which plaintiffs agree would be barred). Rather, plaintiffs claim that an award of prejudgment interest would be an equitable award in order to make the return of the plaintiffs' money a complete return. Plaintiffs' argue that the absence of a statute authorizing prejudgment interest merely indicates that the question is governed by traditional case law, and that here the governing principle is one of fairness.

Plaintiffs' contentions do not withstand scrutiny in the face of the well-established authorities showing that prejudgment interest is not available against the United States in this case. It is well-established that courts lack the power to award interest against the United States on the basis of policy or equitable considerations. *United States v. New York Rayon Importing Co.*,





AO 72A
(Rev.8/82)

329 U.S. 654, 660 (1946); *Smith v. Principi*, 281 F.3d 1384, 1388 (Fed. Cir. 2002).[5] The cases cited by plaintiffs in support of their argument that the Court has inherent equitable power to award interest against the United States are inapposite because none involve a factual situation in which the United States was ordered to pay prejudgment interest. Rather, plaintiffs rely on *Cox v. Shalala*, 112 F. 3d 151, 155 (4th Cir. 1997), in which the court awarded interest to the United States, and not against the United States; and on *Sadighi, et al. v. Daghighfekr, et al.*, 66 F. Supp. 2d 752 (D.S.C. 1999), dealing with a dispute among private parties, and not involving the United States.

Only express language in a statute or contract can justify an award of interest. Such language is absent in this case. The Supreme Court has held that although an award of interest on a claim against the United States would be just or equitable, this fact alone does not empower a court to make

---

[5]Though the defendants here are SEPA and the Federal Energy Regulatory Commission ("FERC"), this suit is in reality against the United States: "The general Rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration', of if the effect of the judgment would be to restrain the Government from acting or to compel it to act." *Rugan v. Rank,* 372 U.S. 609 (1983) (citations omitted); *Portsmouth Redev. & Housing Auth. v. Pierce,* 706 F. 2d 471, 473 (4th Cir. 1983).





AO 72A
(Rev.8/82)

such an award. Any other conclusion would permit a court to supply the consent which only Congress can give to the imposition of interest against the United States. Had Congress desired to permit the recovery of interest in situations where the courts felt it just or equitable, it could have so provided.

## CONCLUSION

Tested by the findings and conclusions set forth above, an award of prejudgment interest against the defendants cannot be made. It is a firmly established and deeply embedded principle, derived from the concept of sovereign immunity, that the United States is not liable for the payment of interest unless sovereign immunity has been expressly waived, or interest is expressly authorized in a relevant statute or contract. *Library of Congress v. Shaw*, 478 U.S. 310 (1986); *United States v. Louisiana*, 446 U.S. 263, 264-65 (1980). All "waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed,' " *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1992), quoting *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 95 (1990) (further citations omitted) and the unequivocal expression must be found in the statutory text. *Nordic Village*, 503 U.S. at





AO 72A
(Rev.8/82)

**37. Finally, waivers of sovereign immunity must be construed strictly in favor of the sovereign. *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *Library of Congress v. Shaw*, 478 U.S. at 318.**

**Therefore, having fully considered plaintiffs' Rule 59(e) motion,**

**IT IS ORDERED:**

**A. That plaintiffs' request that dismissal of plaintiffs' Fifth Amendment claims be without prejudice is hereby granted.**

**B. That plaintiffs' motion to alter or amend judgement to provide for prejudgment interest is hereby denied.**

**C. An amended judgment shall be entered accordingly.**

***IT IS SO ORDERED.***

**MATTHEW J. PERRY, JR.**
**SENIOR UNITED STATES DISTRICT JUDGE**

**Columbia, South Carolina,**

**July 11, 2002.**



AO 72A
(Rev.8/82)